KERR–McGEE CHEMICAL CORPORATION, a Delaware corporation, Plaintiff–Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant–Appellee.

No. 88–3477.

United States Court of Appeals, Eleventh Circuit.

May 15, 1989.

---

Douglas H. Morford, Jacksonville, Fla., for plaintiff-appellant.

Steven L. Brannock, Holland & Knight, Tampa, Fla., for defendant-appellee.

Before POWELL *, Associate Justice (Retired), United States Supreme Court, RONEY, Chief Judge, and HILL, Circuit Judge.

POWELL, Associate Justice:

The question presented is whether, after initially dishonoring a letter of credit on the basis of specified grounds, a bank may subsequently dishonor the credit on the basis of a different ground. We think that under the Uniform Customs and Practices for Documentary Credits, which are expressly incorporated by the letter of credit at issue here, appellee bank was required to state all of its reasons for dishonoring the credit when it was first presented. Because it failed to do so, we reverse the district court's grant of summary judgment in the bank's favor.

I.

In October 1985, Park Bank issued a $1,002,000 letter of credit on the account of Sabar Chemical Corporation for the benefit of appellant Kerr–McGee Chemical Corporation in connection with a sale of chemicals. The letter of credit explicitly provided that it was to be governed by the Uniform Customs and Practices for Documentary Credits, 1983 Revisions (UCP), a widely used code promulgated by the Interna-

tional Chamber of Commerce. The credit stated that it was available for payment of sight drafts drawn on Park Bank when accompanied by specified documentation, including a "Copy of Commercial Invoice at USD 167.00 per metric ton F.O.B. Vessel. Payment terms net thirty days from invoice date." On the basis of the letter, Kerr–McGee shipped to Sabar 6015.24 metric tons of diammonium phosphate.

Shortly after the sale, Sabar requested a 30-day extension of time to pay in exchange for a one percent increase in price. The letter of credit was amended to require "Commercial invoice at USD 168.87 per metric ton, F.O.B. Vessel. Payment terms net 12/15/85." Despite the change in the unit price, the total amount of the letter of credit remained at $1,002,000. Kerr–McGee presented a sight draft and other documentation to Park Bank for payment on December 23, 1985. The invoice and sight draft reflected a total price of $1,014,590.53 that included the agreed increase. On December 27, Sabar sent a telex to Park Bank asking that it waive the discrepancy between the amount of the invoice and sight draft ($1,014,590.53) and the amount of the letter of credit ($1,002,000).

Park dishonored Kerr–McGee's request for payment on December 30, stating three grounds:

(1) Draft exceeds amount of credit.

(2) Signatory on notarized notice not listed as officer of Kerr–McGee.

(3) Invoice does not show price F.O.B. vessel.

Kerr–McGee then submitted additional documentation, including a sight draft for $1,002,000, a statement by the President of Kerr–McGee, and an invoice reflecting the price F.O.B. The total price on the invoice, however, remained $1,014,590.53. On January 2, 1986, two days after the letter of credit expired, Park dishonored the claim, stating two grounds, neither of which had been relied on at the previous dishonor:

* Honorable Lewis F. Powell, Jr., Associate Justice of the United States Supreme Court, Retired, sitting by designation.

(1) Amount of invoice exceeds credit (See Article 41(b) of U.C.P.).

(2) Draft and invoice amounts are inconsistent with one another (See Article 15 of U.C.P.).

Subsequent to the dishonor, Kerr–McGee collected $319,902.88 from Sabar, leaving a balance due and unpaid of $694,687.70.

Kerr–McGee filed this action in the United States District Court for the Middle District of Florida on February 14, 1986. The FDIC assumed control of Park Bank shortly thereafter, and was substituted as defendant. The parties filed a joint stipulation of facts and cross-motions for summary judgment. On January 8, 1988, the district court entered summary judgment for the FDIC, rejecting Kerr–McGee's claim that because Park had specified its grounds for the first dishonor, it was estopped from relying on different grounds for the second dishonor.

## II.

We begin by recognizing what is not at issue here. The controversy here does not involve the validity of Park's grounds for dishonoring the draft, but rather whether Park was estopped from relying on concededly valid grounds.[1] The parties agree that *both* the first and second presentments were insufficient under the terms of the credit. Under Florida law, letters of credit are subject to a rule of "strict compliance." Documents presented for payment must precisely meet the requirements set forth in the credit. Any discrepancy entitles the bank to refuse payment, and the bank bases its decision on the documents alone. *See, e.g., Fidelity Nat'l. Bank v. Dade County,* 371 So.2d 545, 548 (Fla.Dist.Ct.App.1979). If the documents do not on their face meet the requirements of the credit, the fact that a defect is a mere "technicality" does not matter. *See, e.g., Id.; Beyene v. Irving Trust Co.,* 762 F.2d 4 (2d Cir.1985) (misspelling on bill of lading was grounds for dishonor); *Courtaulds North American, Inc. v. North*

*Carolina Nat'l. Bank,* 528 F.2d 802 (4th Cir.1975) (discrepancy between terms "100% acrylic yarn" and "imported acrylic yarn" grounds for dishonor). As expressed by the Florida Court of Appeals: "Compliance with the terms of a letter of credit is not like pitching horseshoes. No points are awarded for being close." *Fidelity Nat'l. Bank,* 371 So.2d at 546. In this case, when appellant presented the documents for payment the second time, the amount of the invoice was not consistent with the letter of credit and the sight draft as required by the terms of the credit. As a matter of "strict compliance" alone, this discrepancy would have justified Park's dishonor. But this does not end the matter.

Appellant contends that Park was estopped from relying on this otherwise valid ground for dishonor because it had failed to assert the invoice amount as a ground for dishonor when appellant first presented the documents. We agree. The parties agreed and the letter of credit specifically stated that it was to be governed by the 1983 Revision of the UCP. Article 16 of the UCP provides:

> If the issuing bank decides to refuse the documents, it must give notice to that effect ... to the beneficiary.... Such notice must state the discrepancies in respect of which the issuing bank refuses the documents....

UCP Art. 16d. The UCP then goes on to state:

> If the issuing bank fails to act in accordance with the provisions of paragraphs (c) and (d) of this article ..., the issuing bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit.

UCP Art. 16e. We think this provision makes plain that a bank will be estopped from subsequent reliance on a ground for dishonor if it did not specify that ground in its initial dishonor. Commentators who have addressed Article 16e are in accord

---

**1.** Also not at issue is Park Bank's refusal of Sabar's request to waive the limit of the letter of credit in response to the change in the purchase price. Both parties agree that Park was not bound to honor this request.

with our view. *See* Dolan, *Strict Compliance with Letters of Credit: Striking a Fair Balance,* 102 Banking L.J. 18, 31 (1985) (describing Art. 16e as a "strict estoppel" or "preclusion" rule); *see also* Their, *Letters of Credit: A Solution to the Problem of Documentary Compliance,* 50 Fordham L.Rev. 848 (1982).

Appellee argues that courts have not previously embraced strict estoppel, but have instead found estoppel only on facts showing a complete change of position by the bank. For example, in *Barclay's Bank D.C.O. v. Mercantile Nat'l. Bank,* 481 F.2d 1224 (5th Cir.1973), the Fifth Circuit found estoppel where a bank affirmatively stated that the documentation was sufficient but dishonored on another ground, and then later in litigation claimed that the documentation had been insufficient. *See also Apex Oil Co. v. Archem Co.,* 770 F.2d 1353 (5th Cir.1985); *Continental Nat'l. Bank v. National City Bank of New York,* 69 F.2d 312 (9th Cir.1934); *Bank of Taiwan v. Union Nat'l. Bank,* 1 F.2d 65 (3d Cir.1924). Appellee and the district court placed major reliance on *Philadelphia Gear Corp. v. Central Bank,* 717 F.2d 230 (5th Cir.1983). In *Philadelphia Gear,* the Fifth Circuit declined to find a bank estoped from raising defects where the bank refused to specify the grounds for it's initial dishonor.

Appellee argues that *Philadelphia Gear* is dispositive here, and that it establishes a bank's right to dishonor any presentment on any valid ground regardless of whether it specified the reasons for its initial dishonor. The flaw in appellee's argument, however, is that none of the cases it cites was decided under the 1983 Revision of the UCP. The 1983 UCP provides that the bank must state its reasons for dishonor, and that failure to state these reasons will preclude a later claim of discrepancy. UCP Art. 16e. It is true that courts have taken varying approaches to the application of estoppel to letter of credit transactions. This fact is not relevant, however, where the parties have explicitly incorporated the 1983 UCP in the letter of credit.

## III.

We now apply these principles to the facts. As to the first ground Park stated for the second dishonor, the UCP's strict estoppel rule is plainly dispositive. The amount of the invoice ($1,014,590.53) was inconsistent with the amount of the credit ($1,002,000) at the first presentment. Park's failure to assert this defect at the first presentment precluded it from asserting it at the second. Appellee, however, contends that the district court's judgment in its favor must be affirmed on the basis of the second ground for the dishonor—the discrepancy between the invoice amount and the amount of the draft. Appellee observes that there was no discrepancy between the invoice and the draft at the first presentment, and that Park therefore could not have been required to assert this defect.

We think this argument is meritless, for Park's two objections at the second presentment are in reality only one. Park's default was its failure to object to the amount on the invoice when it was first presented. Appellee's attempt to recharacterize this single defect in the invoice as two separate discrepancies is not persuasive. Appellant could not, of course, have altered the amount of the credit itself, nor could it have allowed the draft amount to remain inconsistent with the credit. Any objection to a discrepancy involving the invoice would therefore have been an announcement to appellant that the invoice amount had to be corrected. The defect in the invoice amount was apparent at the time of the first presentment, but Park elected not to assert this defect as a ground for dishonor. Appellee cannot do so now by describing the fact that the invoice amount necessarily conflicted with the corrected sight draft as a "separate" ground for dishonor.

Because we think Park's failure to allege the defect in the invoice at the first dishonor estopped it from later relying on that ground to avoid payment, we REVERSE the judgment of the district court and RE-

MAND for entry of judgment in favor of appellant.

SO ORDERED.