**BANQUE DE L'UNION HAITIENNE, S.A., a foreign banking corporation, Plaintiff,**

**v.**

**MANUFACTURERS HANOVER INTERNATIONAL BANKING CORP., Defendant.**

No. 89–2310–CIV.

United States District Court, S.D. Florida.

Feb. 27, 1991.

Richard M. Goldstein, Holland & Knight, Miami, Fla., for plaintiff.

Robert M. Rosenblith, New York City, Julian H. Kreeger, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER OF SUMMARY JUDGMENT

MARCUS, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Complaint, or in the alternative, a Motion for Summary Judgment, and Plaintiff's Cross-motion for Summary Judgment. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

In this action, Plaintiff seeks damages in the amount of $1,473,189, resulting from Defendant's alleged improper payment of an international documentary letter of credit. Both parties move for summary judgment on the basis of the respective rights and duties of the parties as governed by the Uniform Customs and Practice for Documentary Credits (1983 Revision) (hereinafter referred to as "UCP").

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit recently explained:

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608; [*Environmental Defense Fund v.*] *Marsh*,

651 F.2d [983] at 991 [(5th Cir.1981)]. All reasonable doubts about the facts should be resolved in favor of the nonmovant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh*, 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.*, 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronics [Techniques, Inc. v. Wackenhut Prot. Sys., Inc.]*, 669 F.2d [1026] at 1031 [(5th Cir.1982)]; *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir.1970).

> Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh*, 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). *See Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The United States Supreme Court has recently provided significant additional

guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.*, 106 S.Ct. at 2512. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.*

In another recent case, the Supreme Court has declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will *bear* the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (emphasis added).

## II. *FACTS*

This action arises out of transactions involving an international documentary letter of credit. On March 3, 1989, Plaintiff Banque De L'Union Haitienne ("Union Bank") issued a letter of credit in favor of its customer Eleck S.A. ("Eleck") in the amount of $1,400,000. On the same date, Union Bank contracted with Defendant Manufacturers Hanover ("Manufacturers") to act as advising, confirming and paying bank in the transaction. The parties agreed that their relationship would be governed by the UCP. After several Amendments, the letter of credit was assigned an expiration date of April 30, 1989.

After an assignment from the original beneficiary of the letter, North American Trading, the final beneficiary became International Basic Economic Co. ("IBEC"). On April 19, 1989, IBEC first presented documents to Manufacturers for payment on the letter of credit. Employees of Manufacturers rejected this initial request for payment on the letter of credit due to the determination that the documents did not conform to the terms and conditions of the letter of credit. Eleck informed Union Bank on April 20 of Manufacturers' failure to make payment on the letter of credit. On the same day, Plaintiff Union Bank telexed Defendant Manufacturers inquiring as to the discrepancies which led to the rejection of the documents. On April 21, 1989 Manufacturers telexed Union Bank and informed Union Bank that IBEC was to present documents again on April 24, 1989. Manufacturers did not identify any particular discrepancies contained in the documents. Union Bank did not receive the telex until April 24, 1989.

On April 21, 1989 IBEC presented documents to Manufacturers for the second time. Again, Manufacturers rejected the

documents as failing to meet the terms and conditions of the letter of credit. April 24, 1989 saw IBEC make another unsuccessful presentation of documents to Manufacturers. Later that same day, IBEC made a successful presentation to an employee of Manufacturers who had not been involved in the previous rejections of the documents. Manufacturers proceeded to transfer $1,473,189 to IBEC's account at the Republic National Bank of Miami and debit Union Bank's account at Manufacturers for the same amount. On the next day, April 25, 1989, IBEC wire transferred the money overseas and the principals of IBEC disappeared. The documents which had been presented to Manufacturers proved to be fraudulent.

Subsequent to making payment on the letter of credit, Manufacturers sent the documents to Union Bank. Manufacturers claims the documents were received by Union Bank on April 26. Union Bank, however, claims to have not received the documents until April 27. In any event, it is undisputed that Union Bank did not receive the documents until the IBEC principals and the money paid by manufacturers had disappeared.

There is a dispute over when Union Bank *first* notified Manufacturers of its belief that the documents which had been presented by IBEC contained discrepancies. Union Bank claims to have notified Manufacturers by way of a telephone call on

May 5, 1989. Manufacturers claims it was not notified until it received a telex on May 8, 1989. In any event, as will be discussed below, such a dispute is immaterial to the outcome of this case.

Although the Complaint lists several discrepancies alleged to have existed in the documents, See Complaint at para. 19, plaintiff's dispute appears to center around two discrepancies. First, Union Bank claims that the document presented to Manufacturers was neither visaed nor stamped by the Haitian Consulate in Miami, as required by the letter of credit. Second, the claim is made that IBEC did not make a proper presentment of an insurance certificate to Manufacturers. Because of such defects, Union Bank asserts that it is entitled to reimbursement from Manufacturers.

The evidence shows, however, that Union Bank's May 8th telex, notifying Manufacturers of the defects, only pointed to two discrepancies which in fact were not required by the letter of credit.[1] First, the telex stated that the original of an all risks insurance policy was not submitted and second, that the legalization of the consular invoice was made in Miami rather than in the port of shipment. The letter of credit merely required, however, the presentation of copies of the insurance policy and did not specify the location for the consularization.[2] Also, the telex did not state, as

---

1. Because this telex is of vital importance, we quote its text in full:
   Your ref: 6–29956 our LC 3445 USD 1,400,-000.00 documents received showing following discrepancies.
   1) Original of insurance policy not presented
   2) Onsular invoiclrrgd and legalized in Miami instead of in port of shipment Stop
   We express our reserves in this context

2. The relevant portions of the Letter of Credit read as follows:
   ADVISE AND CONFIRM TO NORTH AMERICAN TRADING, 503 WEST CARPENTER ST FAIRFIAS, IOWA 52556 THRU NORWEST BANK OTTUMWA, N.A. 231 WEST SECOND ST. P.O. BOX 220 OTTUMWA, IOWA 52501 PHONE: (515) 68–8121, (515) 245 3131 REF ACCT $ 073900603 054121 ATTN: Q. KENT MIRACLE (515) 245 3131—TLX $ 256 803 FAX (515) 245–3139 WE OPEN THEIR FAVOR IRREVOCABLE AND TRANSFERABLE CREDIT

3445 USD 1,400.000.00 MORE OR LESS 5 PER CENT
   ACCOUNT ELEKTEK PORT AU PRINCE HAITI AVAILABLE SIGHT DRAFT ON YOU STOP
   —COMMERCIAL INVOICE 6 COPIES STOP
   —*CONSULAR INVOICE 2 COPIES VISAED AND STAMPED BY HAITIAN CONSUL OR IN HIS ABSENCE BY CHAMBER OF COMMERCE OR A NOTARY PUBLIC STOP*
   —*INSURANCE 2 COPIES AGAINST ALL RISKS STOP*
   —QUALITY CERT STATING: SUCRE BLANC RAFFINE DE CANNE. POLARISATION 99.8 PCT; EMBALLE DANS DES SACS NEUFS DE JUTE DOUBLES DE POLYPROPILENE STOP
   —BRAZILIAN ORIGIN CERT OF SUGAR STOP
   —INSPECTIN CERT OF WEIGHT (SGS) STOP
   —FULL SET CLEAN ONBOARD OCEAN BLADING OUR ORDER NOTIFY BUYER FREIGHT PREPAID STOP

required by UCP 16(d), whether Union Bank was holding the documents at the disposal of Manufacturers or was returning the documents to it.

### III. *DISPOSITION OF THE CASE UNDER THE UCP*

This undoubtedly is a difficult decision since a fraud has been perpetrated on both banks involving a substantial amount of money. Unfortunately, the beneficiary has vanished with the proceeds and we must now decide who must bear the loss under the appropriate application of the law. As issued by Union Bank, the letter of credit was subject to the UCP. Thus, by inserting this stipulation, the provisions of the UCP have become the terms and conditions of all undertakings between Union Bank, Manufacturers, and the beneficiary. Union Bank specifically points to Article 15 of the UCP, which reads:

> Banks must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with the terms and conditions of the credit ...

■■■ As set forth with great particularity in their motion and supporting affidavits, Union Bank contends that Manufacturers wrongfully paid the beneficiary under the letter of credit upon the presentation of documents which did not appear *on their face* to be in accordance with the terms and conditions of the credit. The plaintiff correctly asserts that a bank has an absolute duty to pay upon strict compliance by the beneficiary with the terms of the letter of credit. *See Beyene v. Irving Trust Co.*, 762 F.2d 4 (2d Cir.1985). The Eleventh Circuit stated in *Kerr–McGee Chemical Corp. v. FDIC*, 872 F.2d 971, 973 (11th Cir.1989) that:

> Under Florida law, letters of credit are subject to a rule of "strict compliance." Documents presented for payment must precisely meet the requirements set forth in the credit ... If the documents do not on their face meet the requirements

of the credit, the fact that a defect is a mere 'technicality' does not matter.

Therefore, it seems that even the slightest deviation in the documents prevents the beneficiary from receiving payment. It is also settled that a confirming bank (Manufacturers) owes the same duty of reasonable care to the issuing bank (Union Bank) and that it is accountable to the issuer for improper payment. *See Banque Paribas v. Hamilton Industries Int'l., Inc.*, 767 F.2d 380 (7th Cir.1985); *Instituto Nacional de Comercializacion Agricola v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 530 F.Supp. 279 (N.D.Ill.1982).

Union Bank claims that Manufacturers did not fulfill its "Article 15" duty because the letter of credit expressly required a "visaed and stamped" Haitian Consular invoice and that a cursory review of the invoice accepted by Manufacturers failed to meet its "strict compliance" duty by accepting and paying upon incomplete copies of the insurance certificate. Therefore, Union Bank argues that Manufacturers must pay because it clearly breached its duty to use reasonable care as required by Article 15 of the UCP.

Even assuming that such discrepancies would have been detected by using reasonable care, Manufacturers asserts that Article 16 of the UCP *alone* disposes of this case. Article 16 reads:

> b. If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, it must determine, *on the basis of the documents alone,* whether to take up such documents, or to refuse them and claim that they appear on their face not to be in accordance with the terms and conditions of the credit.
>
> c. The issuing bank shall have a reasonable time in which to examine the documents and to determine as above whether to take up or to refuse the documents.
>
> d. If the issuing bank decides to refuse the documents, *it must give notice to*

BENEFICIARY STATEMENT THAT ONE SET OF COPY OF ALL DOCUMENTS HAS BEEN

AIRMAILED DIRECTLY TO US STOP

that effect *without delay by telecommunication* or, if that is not possible, by other expeditious means, to the bank from which it received the documents (the remitting bank), or to the beneficiary, if it received the documents directly from him. *Such notice must state the discrepancies in respect of which the issuing bank refuses the documents* and must also state *whether it is holding the documents at the disposal of, or is returning them to, the presenter (remitting bank or the beneficiary, as the case may be). The issuing bank shall then be entitled to claim from the remitting bank refund of any reimbursement* which may have been made to that bank.

e. If the issuing bank fails to act in accordance with the provisions of paragraphs (c) and (d) of this article and/or fails to hold the documents at the disposal of, or to return them to, the presenter, the issuing bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit. [emphasis added]

Manufacturers argues that under the facts of this case, Union Bank has failed to comply with Article 16. We agree. By the express terms of Article 16(b), the issuer must decide whether to reject and claim defects upon the receipt of the documents. Pursuant to 16(c), the issuer is given a "reasonable time" within which to review and to make its determination (usually 3 days) [3] but when it has made its determination, the issuer is required to notify the confirming bank *without delay* and by expeditious means. The notification must specify the discrepancies *and* it must state whether it is holding the documents at the disposal of the bank, or is returning the documents to it. The Article also states that failure to comply with this duty *shall preclude* the issuing bank from claiming that the documents are not in accordance with the terms of the credit.

In the facts involved in the instant case, Union Bank failed in its obligations to Manufacturers by first not giving notice "without delay" by expeditious means of its decision to dishonor and second, by not stating whether it was holding or returning the documents. Although Union Bank received the documents on or about April 27, three days before the letter was to expire, its first documented communication to Manufacturers informing Defendant of the alleged defects was by telex on May 8, eight days *after* the expiration of the letter and *eleven* days after receipt of such documents. Moreover, the telex claims only two defects (which were not actually required by the letter) and it failed to contain any statement regarding the fate of the documents. Even if it is conceded that Union Bank's first notification was made by telephone on May 5 rather than May 8, that date was the fifth business (and eighth calendar) day after the date Union Bank states that it received the documents. This purported telephone call is still too late given the three-day rule set forth in U.C.C. § 5–112 as the maximum "reasonable time" period in which to give notice. *See Cochin,* 612 F.Supp. at 1543. In addition, this call could not be considered "expeditious" since Union Bank allowed the credit to expire and there is no explanation as to why Union Bank waited so long to communicate with Manufacturers, knowing that there were previous problems with this account and in light of today's era of near instantaneous international communications. The term "without delay" was held by the court in *Cochin* to "connote a sense of urgent action within the shortest interval of time possible." *Cochin,* 808 F.2d at 213; *see also* W. Burton, *Legal Thesaurus* 1053 (1980) (stating that the phrase is akin to "instant, instantaneous, instantly, prompt").

Case law also illustrates that Union Bank has violated Article 16 under these circumstances. First, there is the case of *Cochin* which was decided under the 1974 Revision of the UCP and which, like this

---

**3.** The District Court in *Bank of Cochin v. Manufacturers Hanover Trust Co.,* 612 F.Supp. 1533 (S.D.N.Y.1985), *aff'd,* 808 F.2d 209 (2d Cir.1986), determined that "reasonable time" under Article 16 of the UCP was limited by the three-day period specified by U.C.C. § 5–112.

case, was an action by a foreign issuer against a domestic confirmer on a claim of wrongful honor. The district court held that the issuer's twelve to thirteen day delay in notifying the confirmer of defects, and of advice regarding the fate of the documents, resulted in a preclusion of the issuer from asserting defects. The Second Circuit thereafter affirmed "the district court's judgment on the rationale that Cochin's untimely notice constituted a waiver of its rights to assert the documents' compliance." *Cochin*, 808 F.2d at 211. The Second Circuit basically held that Cochin's notification was not "expeditious" and "without delay" as required by the UCP. *Id.* at 212–13. *See also Kuntal, S.A. v. Bank of New York*, 703 F.Supp. 312 (S.D.N.Y.1989) (nine day delay in giving notice of defects held to be a waiver to claim defects pursuant to Article 16 of the UCP).

In addition, the Second Circuit in *Cochin* held that the failure to advise of the *fate* of the documents is another basis supporting the imposition of the sanction of preclusion from asserting defects under Article 16. *Cochin*, 808 F.2d at 212–13. *See also Paramount Export Co. v. Asia Trust Bank, Ltd.*, 193 Cal.App.3d 1474, 238 Cal.Rptr. 920 (1987). Union Bank never addressed this issue with Manufacturers. Consequently, in view of the facts and of the case law interpreting the UCP, we believe there is no factual question that Union Bank violated Article 16 of the UCP. Such violation clearly mandates that Union Bank is precluded from claiming discrepancies and is not entitled to reimbursement from Manufacturers.

Nevertheless, despite the sanction unambiguously imposed by Article 16, Union Bank urges this Court to only focus on Article 15 and strongly argues that Article 16 is not applicable to the instant case. Union Bank argues that Article 16 notice cannot be applied under the facts of this case because Manufacturers clearly breached its Article 15 duty to use reasonable care, and that any notice would have been meaningless and in no way could have remedied the wrongful payment made by Manufacturers. Union Bank first points to

the fact that four days before Manufacturers disbursed the funds, Union asked Manufacturers why it had previously rejected the documents. Union states that Manufacturers did not specifically advise of the discrepancies but only replied "documents presented with some discrepancies." Therefore, Union alleges that it *may* have discovered the fraud had Manufacturers advised Union of the discrepancies early on.

This argument, however, misses the mark. Under the confirmation, Manufacturers owed no duty to inform Union of the reasons why Manufacturers rejected a demand for payment made to *it*, or even that a demand for payment had been made. *Philadelphia Gear v. Central Bank*, 717 F.2d 230, 237 (5th Cir.1983) (neither custom, Code, nor UCP requires issuer to notify its customer before rejecting non-conforming documents, although issuers often do consult customers, as a matter of etiquette, for purposes of securing customer's waver of defects); *Five Star Parking v. Philadelphia Parking Authority*, 703 F.Supp. 20 (E.D.Pa.1989) (neither code, credit, nor UCP impose any duty on issuer to inform its customer before allowing beneficiary to draw on letter of credit).

Next, Union points to the fact that by the time Union received notice of the wrongful payment, the damage had already been done and there was nothing that could have been accomplished by notice from Union. The proceeds were gone; and, therefore, Article 16 should not be applied in light of the purpose behind it. Union Bank elaborates that the true purpose served by the notice provisions of Article 16 is to allow the beneficiary an opportunity to cure the discrepancies prior to the expiration of the case. Plaintiff cites to various authorities which illustrate that Article 16 does in fact serve such a purpose. *See* Plaintiff's Motion for Summary Judgment at page 2. Such authorities, like the case of *Flagship Cruises, Ltd. v. New England Merchants Nat'l Bank of Boston*, 569 F.2d 699, 703 (1st Cir.1978), do recognize that a purpose behind the various notice provisions of Article 16 is to allow the beneficiary an oppor-

tunity to cure discrepancies and receive payment and to penalize the issuer for not providing that opportunity. Union Bank suggests that this purpose is not served in the instant case because no matter how quickly or what type of notice Union Bank might have given Manufacturers, there was no possibility that the defects could have been cured. Union states that by the time it received the fraudulent documents from Manufacturers for review, payment had been made and the beneficiary and the funds had disappeared. Consequently, Union argues Article 16 has no bearing on this case.

Also, Union Bank asks this Court to distinguish the instant case from the case in *Cochin*, which stands in direct conflict to its Article 16 position. Union Bank asks us to focus on the factual differences between the two cases. Plaintiff states that in *Cochin* the issuer had knowledge of the document discrepancies even before the documents were presented to the confirming bank. The issuer in *Cochin*, however, took no action in spite of the fact that it had an opportunity to do so. In ruling that the issuer should bear the loss due to its delay in notification, the district court stated that "Cochin [the issuer] had sufficient notice and time to correct MHT's confirming defects to St. Lucia and is therefore estopped from asserting them." *Cochin*, 612 F.Supp. at 1543. Union Bank asserts that the instant case is different because Union was never made aware of any of the defects before payment was made. Therefore, the notion that Article 16 estops Union from claiming the defects should not be applied because, unlike the issuer in *Cochin*, Union Bank never had an opportunity to remedy the non-conformity. Accordingly, Plaintiff argues, Article 16 has no application in light of its alleged underlying purpose.

Although we understand Plaintiff's point, we do not agree that it is entitled to reimbursement in view of the "overall" purpose of the UCP and of the relevant case law. Plaintiff basically argues that Article 16 does not apply because the defect was incurable. Therefore, the notice would not have been useful. While "cur-

ing a defect" may well be *a* purpose under Article 16, where the beneficiary is the presenter, it is surely not the only purpose. In fact, Union's "usefulness of notice" argument has been clearly rejected both by the Second Circuit in *Cochin* and the Eleventh Circuit in *Pro-Fab, Inc. v. Vipa, Inc.,* 772 F.2d 847, 854 (11th Cir.1985). The Court in *Cochin* plainly stated:

> Cochin proposes that its failure to timely notify MHT was not violative of UCP or letter of credit policy because it caused no additional loss to MHT. Cochin argues that the defects were in any case incurable by the time Cochin received the documents, because St. Lucia had disappeared with the letter of credit proceeds. Although the UCP is not explicit, the Court finds that these provisions should be applied identically to an issuing bank's obligations to a confirming bank after the latter's honor of a demand for payment. Cochin's contention ignores the expectation in the international financial community that the parties will live up to their statutory obligations and is at odds with the basic letter of credit tenet that banks deal solely with documents, not in goods.

*Cochin,* 612 F.Supp. at 1543. The Eleventh Circuit in *Pro-Fab* also rejected the "usefulness of notice" argument and explicitly stated that "[a] bank's duty to notify is in no way contingent upon its evaluation of the *usefulness* of the notice. The fact that Community Bank has now realized in hindsight that Pro-Fab did not have direct access to the required documents ... would not excuse a failure to give timely notice in March 1983." *Pro-Fab,* 772 F.2d at 854 (emphasis added). *See also Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,* 707 F.2d 680, 684–85 (2d Cir. 1983) ("Chase contends that incurability of defect defeats any possibility of waiver. We reject this argument because it is totally at odds with the concept of waiver ...").

■ Whether the "incurability" of a defect has any bearing on the notice requirement of timely notice has been previously addressed and squarely rejected. The case law supports Defendant's position, not Un-

ion's contention that Article 16 should not preclude recovery. Union asserts that it should not pay because it did nothing wrong. In fact, it did. Union violated Article 16, which is an integral part of an international system of business—a system whose dependability must be maintained. This decision must be viewed in light of the UCP's role in international banking operations and in light of the fact that we are dealing in an issuing bank—confirming bank context and not an issuer—beneficiary context (where curability is more relevant since correspondent banks are hardly in the position to cure documents themselves). As noted, the UCP constitutes rules of practice which represent an agreed upon articulation of custom as well as rules of traffic for international banking operations. It provides a foundation on an international level for letter of credit operations affecting not only the undertakings between banks and beneficiaries, but between banks in various correspondent relationships. Therefore, adherence to the UCP is critical to the structure of international banking operations and to the letter of credit as an instrument of international commerce.

It is in the context of maintaining the dependability and integrity of the international business system that we must rule in favor of Manufacturers' motion for summary judgment. As noted in *Cochin*, 808 F.2d at 212, the UCP effectuates the vital policy of promoting *certainty* in letter of credit transactions. In light of this policy, we note that the preclusion penalty provision of Article 16 does not require, as a condition precedent, that the confirming bank establish a loss as a result of the issuing bank's failure to fulfill its Article 16 obligation. Indeed, if an issuing bank can avoid the preclusion penalty in such a fashion, not only would Article 16 be stood on its head, but the *certainty* essential to letter of credit operations would be frustrated. Indeed, if we were to rule in Union Bank's favor today, this would defeat the letter of credit's function of being a swift, fluid and reliable financing device and would ignore the expectation in the international financial community that parties will fulfill their statutory duties. Such a decision would invite issuers to disregard their duties and prove in court that "their" case is excepted from Article 16 because there was nothing they could have done to cure the loss. One can readily see the harmful effect this would have on the system as a whole. The UCP provides the rules of the game and all who deal in credits must be expected to comply.

Therefore, under the applicable case law and controlling policy, we rule in Manufacturers' favor. There being no factual dispute as to Unions violation of Article 16 of the UCP, it is hereby adjudged that Union Bank's Motion for Summary Judgment must be and is hereby DENIED and Manufacturers' Motion for Summary Judgment is GRANTED. Defendant shall submit a proposed Final Order of Summary Judgment within ten (10) days of this Order.

DONE AND ORDERED.