**AMERIKA SAMOA BANK, a Banking Corporation, Appellant**

v.

**PACIFIC RELIANT INDUSTRIES, INC., an Oregon Corporation, Appellee**

High Court of American Samoa
Appellate Division

AP No. 19-90

March 13, 1992

Before RICHMOND, Associate Justice, GOODWIN,* Acting Associate Justice, MUNSON,** Acting Associate Justice, AFUOLA, Associate Judge, and BETHAM, Associate Judge.

Counsel: For Appellant, William H. Reardon
 For Appellee, Roy J.D. Hall, Jr.

MUNSON, J.:

 This matter comes before the Court on appeal from the Trial Division.

Procedural History

 Appellee Pacific Reliant Industries, Inc. (PACREL) brought suit against Paradise Development Company, Inc. (PDC), the Government of American Samoa (Government), and appellant Amerika Samoa Bank (ASB or Bank) in the Trial Division on December 28, 1988. Appellee sued the Bank on an irrevocable standby letter of credit, and sued PDC and the Government for damages for non-payment of $300,000 worth of building materials.

 Paradise answered January 18, 1989, denying that any money was owing. The Bank answered on January 27, 1989, asserting various defenses, including estoppel, fraud, payment, failure of a condition precedent, and laches. Appellant Bank counterclaimed against appellee Pacific Reliant for attorney's fees and costs stemming from a lawsuit

---

 * The Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

 ** The Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Mariana Islands, serving by designation of the Secretary of the Interior.

103

brought in Oregon,[1] and cross-claimed against Paradise Development. The claims against defendant Government have not yet been pursued.

Summary judgment was granted in Pacific Reliant's favor against the Bank on February 1, 1990. An order denying appellant Bank's motion for reconsideration was issued August 8, 1990.

Timely notice of appeal was filed by appellant Amerika Samoa Bank on August 13, 1990.

## Facts

The trial court's statement of undisputed material facts is set forth below:

> The parties are not in disagreement on the essential facts; they disagree on what legal result should follow. [Amerika Samoa Bank] established on behalf of its customer PARADISE DEVELOPMENT COMPANY (hereinafter P.D.C.), its "irrevocable standby letter of credit" in favor of PACREL [Pacific Reliant] "for the account of Paradise Development Company, Inc., to the extent of <u>Three Hundred Thousand and No cents</u> ($300,000 U.S.)." As is standard in such situations, the letter of credit enabled P.D.C. to purchase construction materials from PACREL in Oregon by relying on the bank's credit. The "standby" feature of the letter of credit means that the bank is not called upon to honor a draft until and unless, for some reason, the customer has failed to pay what it owes.
>
> Two virtually identical letters of credit were issued, the first on August 12, 1987, and the second on October 19, 1987. The second was apparently issued because the first letter of credit expired in December of 1987, and P.D.C. anticipated requiring the use of the

---

[1] Pacific Reliant originally brought suit in the United States District Court for the District of Oregon on April 21, 1988. That lawsuit was dismissed for lack of jurisdiction on December 5, 1988. The United States Court of Appeals for the Ninth Circuit affirmed the dismissal by order dated April 11, 1990. See <u>Pacific Reliant Industries, Inc. v. Amerika Samoa Bank</u>, 901 F.2d 735 (9th Cir. 1990).

credit facility for a longer period. Accordingly, the second, or renewed, letter of credit contained the extended expiry date of March 15, 1988. Both instruments, which were drafted and signed by the A.S.B., contained the following provision: "This credit is subject to the uniform customs and practice for documentary credits (1983 Revision) International Chamber of Commerce Documents No. 400." Plaintiff's Exhibits A and B. The Uniform Customs and Practice for Documentary Credits, customarily referred to as the UCP or Uniform Customs, embodies an effort by international bankers at consensual regulation. Prepared under the auspices of the International Chamber of Commerce, the UCP reduces to codified form the customs and practices of the mercantile world relating to letter of credit transactions.

The business arrangement broke down early in 1988, when PACREL apparently did not receive payment for certain invoices. PACREL then attempted to fall back on the letter of credit, and on February 23, 1988 notified A.S.B. of the default on the invoices. It is unclear when exactly the first formal demand for payment was made to A.S.B. Exhibit E1, a telex to A.S.B. from the Hong Kong and Shanghai Banking corporation of Portland, Oregon (PACREL's bank, hereinafter the "Hongkongbank"), dated March 8, 1988, indicates that A.S.B. had received the documents by February 29, 1988. A.S.B.'s opposition to the motion for summary judgment claims that they were received on March 1, 1988. On March 9, 1988, the Hongkongbank telexed A.S.B. directing the latter's attention to the requirements of the UCP --- quoting in part from Article 16 (c), (d), and (e) --- regarding the issuing bank's duty to timely notify refusal and reasons of refusal or otherwise be estopped thereafter from claiming any deficiencies with the documents. A.S.B. did not respond until March 10, 1988, when it telexed the Hongkongbank that it would not honor the letter of credit because PACREL had not complied with the terms of the letter of credit. The nature, however, of the non-compliance was not specified. On the following day, March 11, 1988, the Hongkongbank

informed A.S.B. by telex that it had received a letter by fax from P.D.C. (A.S.B.'s customer) accepting any and all discrepancies in the documents. On March 16, 1988, the day after the letter of credit expired, A.S.B.'s attorney wrote to Hongkongbank, in the "hope of clarifying the situation [presumably of dishonor] for your bank." The Court has reviewed the contents of this letter against the terms of the letter of credit and we are none the wiser as to the exact nature of the non-conformities giving rise to dishonor. However, in opposition to the motion for summary judgment A.S.B. has raised the claim that the documents presented by PACREL did not comply with the terms of the letter of credit in that a "copy" of the bill of lading was submitted when the "original" was required by the terms of the letter of credit. A.S.B. accordingly argues that a question of fact remains for trial. (If in fact the documents presented to A.S.B. conformed to the letter of credit requirements, then A.S.B. of course has no defense.)

PACREL on the other hand submits that it must nonetheless prevail even assuming for the sake of argument that the documents were at variance with the terms and conditions of the letter of credit. It contends that under the terms of the UCP, which were expressly incorporated into the letter of credit by A.S.B.'s own draftsman, A.S.B. was precluded from claiming that the documents were not in accordance with the terms and conditions of the letter of credit because of its failure to assert non-compliance in the timely manner as required by the UCP. Such failure, it is further argued, constitutes A.S.B.'s acceptance of any deficiencies.

Alternatively, PACREL also claims to prevail because A.S.B.'s customer P.D.C. accepted any deficiencies in its March 11, 1988 letter to Hongkongbank.

To these claims, A.S.B. raises two defenses: 1) PACREL does not have standing to make a claim based on the UCP; and 2) P.D.C. could not waive the deficiencies for the bank.

14 A.S.R.2d 41, 42-44 (1990).

## Issues

1. Were there genuine issues of material fact, such that summary judgment in favor of appellee was inappropriate?

2. If there were not, did the trial court err in its application of the law?

## Standard of Review

After a grant of summary judgment, the appellate court reviews the evidence and inferences de novo, in the light most favorable to the non-moving party, to determine whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. Water West, Inc. v. Entek Corp., 788 F.2d 627, 628-629 (9th Cir. 1986); Kraus v. County of Pierce (Wash.), 793 F.2d 1105, 1106-07 (9th Cir. 1986), cert. denied, 480 U.S. 932 (1987).

In de novo review, the appellate court must review the record in light of its own independent judgment without giving special weight to the prior decision. United States v. Brian N., 900 F.2d 218 (10th Cir. 1990).

## Summary Judgment Standard

Civil Procedure Rule 56 provides in part that a summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There can be no "genuine issue of material

107

fact" if there is a complete failure of proof concerning an essential element of the non-moving party's case, since such a failure renders all other facts immaterial. Id. at 323.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [trier of fact] to return a verdict for that party. . . . If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). The mere existence of some alleged factual dispute is insufficient--there must be a genuine issue of material fact to preclude summary judgment. Id. at 248-49. "As to materiality, the substantive law will identify which facts are material. * * * That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which are irrelevant that governs." Id. at 248. Summary judgment is appropriate "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id. at 250.

## Analysis

In its brief, appellant Bank argues both that there were genuine issues of material fact which precluded the grant of summary judgment and that the trial court misapplied the applicable law. The Court will address both contentions.

## Alleged Factual Issues

Sprinkled throughout appellant's brief are claims that there were genuine issues of material fact which the trial court improperly weighed and evaluated at the motion. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby Inc., supra, 477 U.S. at 249.

A review of appellant's brief reveals that it cites the following as genuine issues of material fact: that although it was clear that appellant typed the letter of credit, it was not clear who actually drafted its terms; that appellee committed fraud; that despite the fact that the letter of credit was dubbed an irrevocable standby letter of credit, it was more in the nature of a commercial guaranty; that original bills of lading were required to be presented, not photocopies; that the invoice amount claimed was excessive; and, whether or not appellee was entitled to the

full $300,000 amount of the letter of credit. The Bank's claims are not supported with specific citations to the record or to any materials offered at the summary judgment hearing below.

Appellant's assertions can be dealt with quickly. The party opposing summary judgment has the burden, once movant has put forward a prima facie case, of showing that there exists genuine issues of material fact which render summary judgment inappropriate. Appellant failed to do this. Rather, it is only now on appeal that appellant argues strenuously that genuine issues of fact existed. However, appellant does not direct the Court to specific areas of support in the record below where these purported issues were raised in opposition to the motion. As stated above, summary judgment law is now clear: once movant has met its burden, the non-moving party cannot either rest on its pleadings or hold back evidence or argue that such evidence will develop at trial. See, e.g., First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289-90 (1968).

Appellant's assertions of genuine issues of material fact find no support in the record. In fact, appellant concedes those facts upon which the trial court based its decision. Such facts as may have been in dispute were not material to the motion and were unnecessary to the decision below.

Applicable Law

As a preliminary matter, we will address appellant's contention that under UCP 16(e) appellee lost standing to sue on the dishonored letter of credit when its bank, rather than appellee itself, submitted the documents to appellant for payment. The trial court held that the mere fact that appellee's bank had submitted the documents to appellant did not result in appellee's bank's thereby replacing appellee as the proper claimant. The court held, properly, that UCP 16(e) addresses only notice, and does not limit the issuing bank's liability to the party which actually presents the documents. Also, as appellee notes, as an actual party to the letter of credit it certainly has standing to sue.

The October 19, 1987, document from appellant to appellee was typed on appellant's letterhead and was titled "Irrevocable Standby Letter of Credit No. 87-1007." It stated, in pertinent part, the following:

Gentlemen,

109

We establish our irrevocable standby letter of credit in your favor for the account of Paradise Development Company, Inc., to the extent of . . . $300,000 available by your draft(s) at sight on Amerika Samoa Bank without protest to be accompanied by the following documents:

"Beneficiary's signed statement,

Notice of default of invoice to Amerika Samoa Bank, P.O. Box 3790, Pago Pago, American Samoa."

Partial drawings will be allowed.

\* \* \* Letter of credit is subject to the following provisions: 15 days after arrival of materials, presentation of invoices, and corresponding Bills of Lading or delivery order through Bill of Lading with copy of charter party. This irrevocable letter of credit is transferable and assignable.

\* \* \*

This credit expires March 15, 1988.

This credit is subject to the uniform customs and practices for documentary credits (1983 revision) International Chamber of Commerce Documents No. 400. We hereby agree with the drawers endorsers and bona fide holders of drafts drawn under and in compliance with the terms of the credit that such drafts will be duly honored upon due presentation to the drawee.

The trial court found that appellant had failed to comply with UCP Article 16, subsections (c), (d), and (e), which were incorporated by reference into the letter of credit.

These subsections provide:

(c) The issuing bank shall have a reasonable time in which to examine the documents and to determine as above whether to take up or refuse the

110

documents.

(d) If the issuing bank decides to refuse the documents, it must give notice to that effect without delay by telecommunication or, if that is not possible, by other expeditious means, to the bank from which it received the documents (the remitting bank), or to the beneficiary, if it received the documents directly from him. Such notice must state the discrepancies in respect of which the issuing bank refuses the documents and must also state whether it is holding the documents at the disposal of, or is returning them to, the presenter (remitting bank or beneficiary, as the case may be). The issuing bank shall then be entitled to claim from the remitting bank refund of any reimbursement which may have been made to that bank.

(e) If the issuing bank fails to act in accordance with the provisions of paragraphs (c) and (d) of this article and/or fails to hold the documents at the disposal of, or to return them to, the presenter, the issuing bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit.

The trial court held that appellant had run afoul of subsections (c) and (d), which gave appellant bank a reasonable time to examine the documents presented to it by appellee in support of its demand for payment and, if appellant decided that the presented documents did not conform with the requirements of the letter of credit, to notify appellee of its decision not to honor the demand and to state with particularity the reasons for its decision.

The trial court found that appellant did not consider the documents and relay its decision to accept or decline them in a "reasonable time," as required by subsection 16(c). The UCP being silent on what constitutes a "reasonable time," the lower court relied on case law that provides that when the UCP is silent or ambiguous, analogous Uniform Commercial Code (UCC) provisions may be utilized. The UCC provides three banking days for an issuer of a letter of credit to honor or reject the request for payment. Here, the undisputed facts were that appellant received the demand for payment no later than March

1, 1988, but did not telex its rejection until March 10th. The trial court found as a matter of law that this rejection was not done in a "reasonable time," thus preventing appellee from attempting to cure any legitimate deficiencies appellant Bank claimed. This common sense analysis was based on the fact that the "clock keeps ticking" in these situations, and the issuing bank must act in a reasonable amount of time to afford the party deemed not to be in compliance an opportunity to cure any specified deficiencies.

The trial court further found that appellant violated subsection 16(d) because its rejection failed to specify the claimed discrepancies and to state whether the documents were being returned to appellee or were being held until further directions from appellee. The trial court based its decision on these two failures by appellant.

However, the court also found that these failures by appellant would have precluded it from claiming non-compliance under 16(e) and that appellant's customer, PDC, could waive any claimed deficiencies, thus obligating appellant to pay the $300,000 to appellee even if there were legitimate deficiencies in the documents presented for payment.

Because we believe the trial court's decision on the first stated ground was correct and provided ample support for its decision, we AFFIRM, and do not consider the alternative grounds upon which the decision was based.

While it is true that an agreement which is ambiguous on its face is not appropriate for summary judgment, IBEW, Local 47 v. Southern California Edison Co., 880 F.2d 104, 107 (9th Cir. 1989), this agreement was not ambiguous. The letter of credit clearly and concisely set forth the conditions to be met by appellee before appellant was obligated to pay. Even if the agreement was unclear, ambiguities in a letter of credit are resolved against the drafter. Banque Paribas v. Hamilton Indus. Int'l, Inc., 767 F.2d 380 (7th Cir. 1985). Appellant offered nothing in support of its claim that someone other than itself actually drafted the letter of credit. Further, since the issuer of a letter of credit or its customer has the opportunity to draft any desired protections into the letter, a court will not infer added protections which were not clearly conveyed to the beneficiary. Atari, Inc. v. Harris Trust and Sav. Bank, 599 F. Supp. 592 (N.D. Ill. 1984), aff'd in part, rev'd in part and remanded, 785 F.2d 312 (7th Cir. 1986).

A standby letter of credit does not call upon the bank to honor

112

a draft until and unless the bank's customer has failed to pay what it owes or otherwise has defaulted on its underlying contract with the beneficiary. Temtex Products, Inc. v. Capital Bank & Trust Co., 623 F. Supp. 816 (D.C. La. 1985), aff'd 788 F.2d 1563 (5th Cir. 1986). Here, the uncontradicted evidence below shows that appellee had sought payment from PDC, appellant's customer, and had not received payment within fifteen days after the arrival of materials, and the presentation of invoices and corresponding bills of lading by appellee to PDC. At that point, appellant was obligated to honor the draft or state its reasons for not honoring it.

A standby letter of credit requires only that the presenter deliver the correct documentation; it does not require actual proof of default. Security Fin. Group, Inc. v. Northern Ky. Bank and Trust, Inc., 858 F.2d 304 (6th Cir. 1988), as amended, 875 F.2d 529 (1989). Here, the letter of credit required from appellee beneficiary only a signed statement and a notice of default of invoice to appellant, both of which were submitted by appellee. Once appellee provided these documents, appellant was obligated to pay "without protest" the amount of the invoices up to $300,000.[2]

The distinction between a standby letter of credit and a true guaranty is that the letter of credit is a direct obligation to pay upon presentation of specified documents showing a default and the guaranty is a secondary obligation requiring proof of the fact of default. American Nat'l Bank & Trust Co. of Chicago v. Hamilton Indus. Int'l, Inc., 583 F. Supp. 164 (N.D. Ill. 1984), rev'd on other grounds sub nom. Banque Paribas v. Hamilton Indus. Int'l, Inc., 767 F.2d 380 (7th Cir. 1985). There can be no serious dispute that the "irrevocable standby letter of credit" was anything other than what it purported to be. Not only was it denominated as such, but its terms made it clear that appellant would honor it "without protest" upon presentation by appellee of the proper documents--a characteristic attribute of such letters.

The distinguishing feature of a letter of credit is the principle of the independence of the obligations under the letter of credit from any

---

[2] It is undisputed that at the time the invoices were presented to appellant bank, the amount due was approximately $400,000. Thus, there is no question that appellant was obligated to pay to appellee the entire $300,000, and appellant's argument that appellee is obligated to prove its damages need not be addressed.

obligations stemming from the underlying transaction. Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464 (5th Cir. 1985). The issuer of a letter of credit cannot look to the underlying transaction to supplement or interpret the terms of the letter of credit. Ward Petroleum Corp. v. Federal Deposit Ins. Corp., 903 F.2d 1297, 1300 (10th Cir. 1990). Likewise, the issuer cannot look to a course of dealing or performance to justify dishonoring a facially conforming demand. Id. To the extent that appellant claims the course of dealings between the parties supports its position that this was not truly an irrevocable standby letter of credit, or that original bills of lading were required, those arguments find no support in the case law.

Where provisions of the UCP are expressly incorporated into a letter of credit, the bank which issued the letter is required to state all its reasons for dishonoring the credit when it is first presented. Kerr-McGee Chem. Corp. v. Federal Deposit Ins. Corp., 872 F.2d 971, 974 (11th Cir. 1989). If the bank fails to do so, it will be estopped from subsequently asserting other grounds. Id. Here, the UCP provisions were expressly incorporated into the letter of credit. Even appellant agrees that it failed to state any reasons for its decision to dishonor the credit. Although it is not necessary for deciding this appeal, we agree that the trial court's decision could have rested on this ground as well.

The provisions of the UCP which preclude a bank from making an untimely claim that documents presented to it were not in compliance with the letter of credit are intended to give the presenter a chance to cure any curable defects. LeaseAmerica Corp. v. Norwest Bank Duluth, N.A., 940 F.2d 345, 349 (8th Cir. 1991). Here, appellant bank never specified the manner in which it found the documents not in conformity with the letter of credit. Even if it had stated its objections with specificity, it did so in such a manner as to prevent appellee from timely curing any defects.

In conclusion, the great weight of authority requires strict compliance (rather than substantial compliance) with the terms of the letter of credit. Id. (numerous citations). Requiring strict compliance with the terms of a letter of credit is not unfair:

> Courts in this area are not dealing with widows and orphans. . . . There is no reason to bend the law of credits out of shape and to destroy an efficient commercial device to protect careless, less than diligent professionals. If they do not know the rules, let them

114

eat the cake of compliance.

Dolan, <u>Strict Compliance with Letters of Credit: Striking a Fair Balance</u>, 102 Banking L.J. 18, 29 (1985).

FOR THE FOREGOING REASONS, the decision of the Trial Division is AFFIRMED in all respects.