371 So.2d 545 (1979)
FIDELITY NATIONAL BANK OF SOUTH MIAMI, an Association Organized and Existing under the Laws of the United States, Appellant,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Appellee.
No. 78-1966.
District Court of Appeal of Florida, Third District.
May 29, 1979.
Paul & Thomson and Sanford L. Bohrer, Miami, for appellant.
Stuart L. Simon, County Atty., and R.A. Cuevas, Jr., Asst. County Atty., for appellee.
Bruce Culpepper, Tallahassee, for Florida Association of Registered Bank Holding Companies, Inc., as amicus curiae.
Before HENDRY, HUBBART and SCHWARTZ, JJ.
*546 SCHWARTZ, Judge.
Compliance with the terms of a letter of credit is not like pitching horseshoes. No points are awarded for being close. Because the judgment below contravenes this established principle of commercial law, it is reversed.
The controlling facts are entirely undisputed. In September 1973, at the instance of one of its customers, C.S.F. Condominiums Ltd., the appellant, Fidelity National Bank of South Miami, which was the defendant below, issued an "irrevocable commercial letter of credit" to Dade County, the present appellee. The bank's undertaking, in effect, secured C.S.F.'s performance of a subdivision agreement with the county. The letter of credit, which, as subsequently modified, was for $142,300 and bore an expiration date of September 22, 1977, provided that the bank would pay the county the face amount at sight of the county's draft, drawn for that sum
"Accompanied by:
 Certificate of Dade County Public Works Director, stating that C.S.F. Condominiums, Ltd., has failed to complete the improvements as specified in agreement dated September 10, 1973, between Dade County Board and C.S.F. Condominiums Ltd."
On September 22, 1977, the letter's expiration date, the county, in attempting to comply with its terms, tendered the bank two separate papers along with its draft. One was a memorandum from William M. Powell, the Public Works Director  the person referred to in the letter of credit  to the county's Finance Director. The document directed him to
"Please take the necessary steps to collect the full amount of the $142,300 bond in accordance with the terms of the agreement now in effect."[1]
The other document was a letter to the bank which tracked the statement required by the letter of credit, but which was executed, not by the Public Works Director, but by the Chief Accountant, a subordinate of the Finance Director. It stated:
 "Fidelity National Bank of South Miami
 5880 Bird Road
 Miami, Fl 33155
 Gentlemen:
 Subject: Irrevocable Letter
 of Credit # 705
 Dated 9/30/73, Reduced
 9/22/75
This is to certify that C.S.F. Condominiums, Ltd. has failed to complete the improvements as specified by agreement dated September 10, 1973, on irrevocable letter of credit between Dade County and C.S.F. Condominiums, Ltd.
 Sincerely,
 /s/
 Richard Yoder
 Chief Accountant"
The bank, contending that the terms of the letter of credit had not been complied with, refused to pay the draft. The county sued the bank in the Dade County Circuit Court and, after a non-jury trial, won a judgment for the face amount of the letter of credit, $142,300 plus interest. The bank appeals and we reverse.
Under Sec. 675.5-114(1), Fla. Stat. (1977) the issuer of a letter of credit must *547 honor a draft "... which complies with the terms of [a] relevant credit . ." The standard to be applied in interpreting this provision is clearly that the beneficiary must comply very strictly with and without deviation from the provisions of the letter. Indeed, the cases and authorities seem to have ransacked Roget in order to find expressions which serve to emphasize the point. In Courtaulds North America, Inc. v. North Carolina National Bank, 528 F.2d 802, 805-806 (4th Cir.1975), for example, the Court stated:
"... as the predominant authorities unequivocally declare, the beneficiary must meet the terms of the credit  and precisely  if it is to exact performance of the issuer. Failing such compliance there can be no recovery from the drawee."
* * * * * *
"Nothing less is shown to be tolerated in the trade. No substitution and no equivalent, through interpretation or logic, will serve. Harfield, Bank Credits and Acceptance (5th Ed. 1974), at p. 73, commends and quotes aptly from an English case: `There is no room for documents which are almost the same, or which will do just as well.' Equitable Trust Co. of N.Y. v. Dawson Partners, Ltd., 27 Lloyd's List Law Rpts. 49, 52 (1926)." [emphasis supplied]
Accord, e.g., Insurance Company of North America v. Heritage Bank, N.A., 595 F.2d 171 (3d Cir.1979); and cases cited; Pringle-Associated Mortgage Corp. v. Southern National Bank of Hattiesburg, Miss., 571 F.2d 871, 874 (5th Cir.1978); Chase Manhattan Bank v. Equibank, 550 F.2d 882 (3d Cir.1977); Barclays Bank, D.C.O. v. Mercantile National Bank, 481 F.2d 1224 (5th Cir.1973), cert. dism. 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974); Venizelos, S.A. v. Chase Manhattan Bank, 425 F.2d 461 (2d Cir.1970). The application of these principles to the transaction involved in this case requires reversal of the trial judge's conclusion that the county had complied with the terms of the credit and was thus entitled to recovery. The document required for payment was a "[1] certificate [2] of Dade County Public Works Director, stating that C.S.F. Condominiums, Ltd. has failed to complete the improvements specified . ." Neither of the two documents produced by the county satisfied this requirement. Even assuming that the Public Works Director's memorandum was a "certificate," it did not "certify" the existence of the facts required. The certificate which did so was not "of [the] Dade County Public Works Director." The county clearly did not adhere to the precise terms of the letter and was thus precluded from recovery.
The county seems to argue that the director's memorandum, when taken together with the letter, constituted the certificate required. The issuer of a letter of credit, however, is not obliged, and is not even permitted, to engage in any such editorial or interpretive process. In the Courtaulds case, supra, the letter of credit required the presentation of an "invoice stating 100% acrylic yarn." The beneficiary presented an invoice stating "imported acrylic yarn" with attached packing lists which showed that the products were "100% acrylic." The trial court held that the documents, as a whole, constituted sufficient compliance. The court of appeals reversed on the holding that strict compliance had not been demonstrated. Similarly, in Crocker First National Bank of San Francisco v. De Sousa, 27 F.2d 462 (9th Cir.1928), reversing 23 F.2d 118 (N.D.Cal. 1927), cert. denied, 278 U.S. 650, 49 S.Ct. 94, 73 L.Ed. 561 (1928), the court held that the terms of a letter of credit which called for a single document showing the shipment of "150 tons white Java refined granulated sugar" were not satisfied by the presentation of several documents which, read together, made it appear that such a shipment had occurred. See also Insurance Co. of America v. Heritage Bank, N.A., supra.
Nor does it matter whether a "reasonable person," viewing both documents, would conclude that the events had taken place which the bank's customer and the county agreed would call for payment; that is, that C.S.F. Condominiums had defaulted on *548 its agreement to make subdivision improvements. The obligation of the issuer of a letter of credit is entirely independent and unrelated to the underlying transaction between the beneficiary of the letter and its purchaser. As was said in the Courtaulds case, supra, at 528 F.2d 805:
"In utilizing the rules of construction embodied in the letter of credit  the Uniform Customs and State statute  one must constantly recall that the drawee bank is not to be embroiled in disputes between the buyer and the seller, the beneficiary of the credit. The drawee is involved only with documents, not with merchandise. Its involvement is altogether separate and apart from the transaction between the buyer and seller; its duties and liability are governed exclusively by the terms of the letter, not the terms of the parties' contract with each other."
See generally, Barclays Bank, D.C.O. v. Mercantile National Bank, supra; Chase Manhattan Bank v. Equibank, supra.[2]
A letter of credit amounts to an offer by the issuer to purchase certain documents. If those documents are not tendered, the offer is not accepted, and the issuer is not bound. The efficacy of the letter of credit as a convenient and useful instrument of commerce would be severely damaged were the courts to hold the issuer to any duty beyond the ministerial ones of laying the instruments next to one another, and determining whether they precisely coincide. See Kingdom of Sweden v. New York Trust Co., 197 Misc. 431, 96 N.Y.S.2d 779 (Sup.Ct. 1949), and cases and authorities cited; Harfield, The Sensible Use of Acceptances and Letters of Credit, 56 Journal of Commercial Lending 25. As appears in Para. 7.7016, Comptroller of the Currency Rulings:
"A National bank may issue its own letters of credit to or on behalf of, its customers in the normal course of its business provided that the bank's obligations may legally be described as a letter of credit and not as a mere guaranty. In order to constitute a true letter of credit transaction, the following elements must all be present: (1) the bank must receive a fee or other valid business consideration for the issuance of its undertaking; (2) the bank's undertaking must contain a specified expiration date or be for a definite term; (3) the bank's undertaking must not be unlimited but be up to a stated amount; (4) the bank's obligation to pay must arise only upon the presentation of specific documents and the bank must not be called upon to determine disputed questions of fact or law; (5) the bank's customer must have an unqualified obligation to reimburse the bank on the same condition as the bank has paid." [e.s.]
Dade County did not strictly comply with the terms of the credit and may not recover under it as a matter of law. The judgment below is reversed and the cause is remanded with directions to enter judgment for the appellant-bank.
Reversed and remanded.
NOTES
[1] In its entirety, the memorandum, dated September 20, 1977, stated:

"On September 13, 1973, we transmitted to you Irrevocable Letter of Credit No. # 705 dated September 10, 1973, in the amount of $280,000.00 on Fidelity National Bank of South Miami, submitted to us as cash bond for roads, sidewalks, drainage, fill, curb and gutters, fire hydrants and one street sign. On August 13, 1974, the bond was reduced to $142,300.00 for fill, sidewalks, street sign and fire hydrants. The $142,300.00 bond was extended twice and its current expiration date is September 22, 1977.
The principal and bank was required to submit to this office by 10:00 A.M. September 20, 1977, either a new letter of credit or extend the expiration date to September 22, 1978. This has not been complied with. The improvements are not complete and the bank, which has foreclosed on the subject property, will not extend the bond.
Please take the necessary steps to collect the full amount of the $142,300.00 bond in accordance with the terms of the agreement now in effect."
[2] A "guaranty" of performance of the underlying transaction would turn the issuer's obligation into one of suretyship. Such an undertaking is vastly different from that involved under a letter of credit and is indeed one in which a national bank like the present appellant is forbidden to engage. Barclays Bank, D.C.O. v. Mercantile National Bank, supra; cf. Ferguson v. Five Points National Bank of Miami, 187 So.2d 45 (Fla. 3d DCA 1966).