586 So.2d 366 (1991)
CARGILL, INCORPORATED, Appellant,
v.
SUNLIGHT FOODS, INCORPORATED, Appellee.
No. 91-367.
District Court of Appeal of Florida, Third District.
June 18, 1991.
Rehearing Denied September 16, 1991.
Murai, Wald, Biondo & Moreno and Marianne A. Vos, Miami, and Jorge L. Guerra, Coconut Grove, for appellant.
Hunter & Schultz and Steven Schultz, Miami, for appellee.
Before FERGUSON, COPE and GERSTEN, JJ.
COPE, Judge.
Cargill, Inc. appeals the trial court's denial of Cargill's motion to dissolve an injunction stopping payment on a letter of credit and the denial of a motion to increase the injunction bond. We reverse.
Cargill, as lessor, and Sunlight, as lessee, entered into a lease in 1986. Two years later Sunlight arranged for the issuance by City National Bank of a letter of credit naming Cargill Oilseeds Processing as the beneficiary. The beneficiary could make demand under the letter of credit if it presented: 1) the original letter of credit, 2) a written statement, signed by an officer of Cargill Oilseeds Processing, stating "Sunlight Foods, Inc. has failed to comply with terms of payment for invoices due," and 3) copies of the unpaid invoice(s).
The letter of credit was amended twice. The first amendment changed the name of the beneficiary from "Cargill Oilseeds Processing" to "Cargill, Incorporated." The second amendment reduced the amount of the letter of credit from $150,000 to $85,000 *367 and extended the letter's expiration date to December 31, 1990.[1]
On December 28, 1990, Cargill made demand under the letter of credit. Cargill presented a letter signed by an officer of Cargill, Incorporated which stated Sunlight failed to comply with terms of payment for invoices due. Cargill also presented an invoice for the amount of the debt. City National Bank examined the documents and determined it would honor the letter of credit.
On January 3, 1991, the day the bank was to pay Cargill, Sunlight filed a complaint for injunctive relief against Cargill and applied for a temporary injunction to stop City National Bank from honoring the letter of credit. The trial court granted the injunction and ordered Sunlight to post an injunction bond in the amount of $15,000.
With regard to the bond, Sunlight argued that if it were ultimately determined that Cargill had been wrongly enjoined, then Cargill would be entitled to recover against the letter of credit which had been posted at Sunlight's expense. That being so, Sunlight argued that it only needed to post an additional $15,000 bond to cover attorneys fees, costs, and incidental expenses incurred by Cargill in the event the injunction was found to have been wrongfully issued  rather than $15,000 plus the letter of credit amount of $85,000. The court agreed and set the bond at $15,000.
Sunlight sought injunctive relief for two reasons. First, Sunlight contended that the documents presented by Cargill did not conform to the requirements of the letter of credit. Second, Sunlight asserted that Cargill was perpetrating a fraud upon City National Bank. Sunlight claimed it would suffer irreparable harm because, if the bank honored the letter of credit and sought reimbursement from Sunlight, the company would have to use working capital and could not operate its business. After the injunction was entered, City National Bank reconsidered its position and apparently determined that the documents did not conform to the letter of credit and, without a court order requiring it to do so, the bank would not honor the letter of credit.[2]
Cargill moved to dissolve the injunction arguing that the documents conformed to the requirements of the letter of credit and that Sunlight was actually attempting to have the court resolve issues relating to the underlying contract between Cargill and Sunlight. Cargill also argued that since the bank was now refusing to honor the credit, the injunction bond should be increased to include the amount of the letter of credit. The trial court denied both motions and Cargill has appealed.[3]
An irrevocable letter of credit is a specialized document which is intended to provide a simple, reliable mechanism for payment of funds in commercial transactions, domestic and foreign. An irrevocable letter of credit transaction involves three distinct contracts, each one being entirely separate from another. See Braun v. Intercontinental Bank, 466 So.2d 1130, 1132 (Fla. 3d DCA 1985); H. Harfield, Letters of Credit 48 (1979). These agreements are: (1) the underlying contract between Cargill and Sunlight, in this case the lease; (2) the contract between the bank, City National Bank, and its customer, Sunlight, whereby City National Bank agreed to issue the letter of credit; and (3) the letter of credit itself, which is a contract between the bank and the beneficiary, Cargill. See Braun, 466 So.2d at 1132.
In general, once the beneficiary receives an irrevocable letter of credit (or an authorized written notification of it), the letter of credit is irrevocably "established," § 675.106(1)(b), Fla. Stat. (1989), and may not be *368 revoked or modified without the beneficiary's consent. Id. § 675.106(2). Thereafter, the beneficiary is entitled to be paid promptly upon presentation to the bank of the documents described in the letter of credit.
The bank's obligation to its customer [Sunlight] "unless otherwise agreed does not include liability or responsibility ... [f]or performance of the underlying contract ... or other transaction between the customer [Sunlight] and the beneficiary [Cargill]... ." § 675.109(1)(a), Fla. Stat. (1989). When the beneficiary presents the required documents to the bank, the bank:
must examine [the] documents with care so as to ascertain that on their face they appear to comply with the terms of the credit but unless otherwise agreed assumes no liability or responsibility for the genuineness, falsification or effect of any document which appears on such examination to be regular on its face.
§ 675.109(2), Fla. Stat. (1989). The bank's role has been characterized as purely a ministerial one and the bank's duty should not be anything other than placing the required documents next to the letter of credit "and determining whether they precisely coincide." Fidelity Nat'l Bank of South Miami v. Dade County, 371 So.2d 545, 548 (Fla. 3d DCA 1979) and cases cited therein. If the bank determines that the documents presented by the beneficiary conform to the credit, the bank is obligated to honor the demand for payment. § 675.114(1), Fla. Stat. (1989); see B.G.H. Insurance Syndicate, Inc. v. Presidential Fire & Casualty Co., 549 So.2d 197, 198 (Fla. 3d DCA 1989), review dismissed, 557 So.2d 867 (Fla. 1990).
An exception to the bank's duty to honor the demand occurs if apparently conforming documents are "forged or fraudulent or there is fraud in the transaction." § 675.114(2), Fla. Stat. (1989); Tandy Brands, Inc. v. Master Marketing Ass'n, Inc., 481 So.2d 925, 926 (Fla. 4th DCA 1985); B.G.H. Fraud in the transaction must rise to a level of:
such an egregious nature as to vitiate the entire underlying transaction so that the legitimate purposes of the independence of the bank's obligation would no longer be served. `[I]t is generally thought to include an element of intentional misrepresentation in order to profit from another. .. .' This fraud is manifested in the documents themselves, and the statements therein, presented under the letter of credit.
Tandy, 481 So.2d at 926 (citations omitted). This exception is a very limited one. See Tandy, 481 So.2d at 927; B.G.H., 549 So.2d at 198; Harfield, Letters of Credit 75-79. If a fraud is being perpetrated, the trial court may enjoin the bank from honoring the letter of credit. § 675.114(2)(b), Fla. Stat. (1989).
Generally, a party seeking a temporary injunction must establish: (1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent; and (4) that the granting of a temporary injunction will not disserve the public interest.
Cordis Corp. v. Prooslin, 482 So.2d 486, 489-90 (Fla. 3d DCA 1986) (footnote omitted; citations omitted). In this case Sunlight has failed to demonstrate it is entitled to injunctive relief. We conclude that Sunlight does not have a substantial likelihood of prevailing on the merits, nor has it established irreparable injury.
Turning first to the question of irreparable injury, the letter of credit is a contract for the payment of money. If the bank wrongly makes payment on the letter of credit, Sunlight will have a good claim for money damages against the bank. As there is an adequate remedy at law, there is no immediate and irreparable injury which would justify the issuance of an injunction.
Sunlight argues that if the payment is not enjoined, then the bank will make payment on the letter of credit and seek immediate reimbursement from funds that Sunlight has on deposit with the bank. Such a loss would result in irreparable harm, according to Sunlight, because it will not *369 have sufficient cash to operate its business in the ordinary course. We do not think that Sunlight's claim rises to the level of irreparable injury within the meaning of the injunction standards or the law of letters of credit.[4]
Turning next to the likelihood of prevailing on the merits, Sunlight argues that the documents presented by Cargill do not conform to the requirements of the letter of credit. For present purposes, we assume  but do not decide  that injunctive relief is available where there are nonconforming documents.[5] Sunlight's argument in this regard revolves around amendments number one and two to the letter of credit. When the letter of credit was initially established, the beneficiary was identified as Cargill Oilseeds Processing, both in the caption of the standard form letter of credit, and also in the body of the letter of credit itself.
Amendment number one to the letter of credit changed the beneficiary to Cargill, Incorporated. This was accomplished on a standard amendment form which contains an area setting forth specifically the matters being amended.
Subsequently, the parties agreed to a second amendment to the letter of credit. The operative part of the amendment form decreased the amount of the letter of credit and extended the expiration date. When the amendment form was prepared, however, the preliminary reference line continued to show Cargill Oilseeds Processing as the beneficiary. The standard form also contained a signature line under which was typed Cargill Oilseeds Processing, rather than Cargill, Incorporated.
Because in the preliminary parts of amendment number two the term Cargill Oilseeds Processing was used, rather than Cargill, Incorporated, Sunlight argues that amendment number two changed the name of the beneficiary from Cargill, Incorporated back to Cargill Oilseeds Processing. We are unable to agree with that contention. The operative part of amendment number two contains no language whatsoever which could be construed as eliminating Cargill, Incorporated as the beneficiary and reinstating Cargill Oilseeds Processing as the beneficiary. The fact that the name of the previous beneficiary was carried forward in the caption of amendment number two does not, in our view, operate as an inadvertent amendment so as to reinstate the name of the original beneficiary. That being so, the documents presented to the bank were in conformity with the requirements of the letter of credit.
Sunlight also argues that since the beneficiary was Cargill Oilseeds Processing and the documents presented to the bank were *370 signed by an officer of Cargill, Incorporated, Cargill was intentionally trying to defraud the bank into honoring the letter of credit. This is a variation of the nonconforming document argument, which we have rejected. That being so, there is no basis for the claim of fraud and no basis for injunctive relief. See B.G.H.; Braun; Fidelity Nat'l Bank; Tandy.
Therefore, we reverse the order denying the motion to dissolve and remand with instructions to dissolve the injunction. In light of this ruling, it is not necessary to address the injunction bond issue.
NOTES
[1] The original letter would have expired on December 31, 1989.
[2] Whether the law of estoppel would prevent the bank's change of position is not now before us. See Barclay's Bank D.C.O. v. Mercantile Nat'l Bank, 481 F.2d 1224, 1236 (5th Cir.), cert. dismissed, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1973); see also Lewis State Bank v. Advance Mortgage Corp., 362 So.2d 406, 410 (Fla. 1st DCA 1978).
[3] City National was joined as a party defendant in the proceedings below, but has elected not to participate in this appeal.
[4] One commentator has stated that a purpose of the letter of credit is to protect the beneficiary from the possibility of the customer's insolvency.

If, for example the customer goes into bankruptcy after the letter has been issued, but before it has been drawn upon, the issuer must pay despite the fact that the customer will not be able to pay the issuer. The same would be true if the customer had repudiated the contract of reimbursement. Since these are the very risks (customer's insolvency or unwillingness to pay) which the beneficiary sought to avoid by demanding the issuance of the letter of credit, it should not be surprising that the issuer cannot assert them as defenses against the beneficiary.
J. White and R. Summers, Uniform Commercial Code 9 (3d ed. 1988).
[5] Some commentators assert that injunctive relief is not available in such circumstances. It could be argued that section 675.114(2)(b) authorizes injunctive relief only in the circumstances there stated. One commentator has stated that:

[i]f the anticipated breach of the letter of credit contract is overt, that is to say, nonconformity of the documents to the terms of the credit, injunctive relief is inappropriate because nonpayment by the issuer is legally justified and legally required if the issuer is to preserve its right to reimbursement under the customer/issuer contract. Injunction is an appropriate remedy only when the documents are latently defective, although on their face they conform to the terms of the credit. It is a fundamental proposition of letter of credit law that all parties deal in documents rather than with the facts the documents do not accurately reflect; judicial restraint on payment because documents do not accurately reflect facts is therefore superficially an antithesis that destroys the foundation of letter of credit practice.
H. Harfield, Letters of Credit 76; see also J. Dolen, The Law of Letters of Credit, para. 9.03[1][b], at 9-34 (2d ed. 1991).