609 So.2d 689 (1992)
BANCO DO BRASIL, S.A., Appellant,
v.
CITY NATIONAL BANK OF MIAMI, Appellee.
No. 89-2822.
District Court of Appeal of Florida, Third District.
December 1, 1992.
White & Case and Stephen M. Corse, Miami, for appellant.
Lapidus & Frankel and Richard L. Lapidus, Miami, for appellee.
Before BARKDULL, BASKIN and COPE, JJ.

REVISED OPINION
COPE, Judge.
Banco do Brasil appeals a final judgment in favor of City National Bank in Banco do Brasil's suit for payment under a letter of credit. We reverse.

I.
Sea-Land Seafood, Inc., a Miami seafood importer, arranged for appellee City National *690 Bank of Miami to issue an irrevocable letter of credit in favor of its joint venture partner, Sul Atlantico de Pesco, S.A., a Brazilian seafood exporter. City National designated Banco do Brasil (the Brazilian exporter's bank) to act as the advising bank, and Banco do Brasil also served as the paying bank for the letter of credit transactions.
Banco do Brasil made four payments under the letter of credit without incident. After making the fifth payment, in the amount of $200,000, City National telegraphed Banco do Brasil that it would not honor the letter of credit and would not pay the $200,000 amount. No explanation for this refusal was given to Banco do Brasil.[1]
During the following year, Banco do Brasil made numerous requests for payment or for an explanation for nonpayment. After one year's delay, City National finally sent a telex setting forth its reasons for dishonor.
Banco do Brasil brought suit. After a bench trial, the court ruled in City National's favor. Banco do Brasil has appealed.

II.
The letter of credit in this case was, by agreement of the parties, expressly made subject to the 1974 edition of the International Chamber of Commerce's Uniform Customs and Practices for Documentary Credits ("UCP"). We follow the leading case of Bank of Cochin, Ltd. v. Manufacturers Hanover Trust Co., 808 F.2d 209 (2d Cir.1986) in interpreting the pertinent provisions of the UCP which are applicable to the present case:
In order to effectuate the vital policy of promoting certainty in letter of credit transactions, the UCP provides the following safeguards in Article 8:
(d) The issuing banks shall have a reasonable time to examine the documents and to determine ... whether to make such a claim [of wrongful honor].
(e) If such claim is to be made, notice to that effect, stating the reasons therefor, must without delay, be given by cable or other expeditious means to the bank from which the documents have been received (the remitting bank) and such notice must state that the documents are being held at the disposal of such bank or are being returned thereto.
UCP 8(d), (e) (emphasis added). These provisions have been interpreted to incorporate a penalty against an issuing bank that does not assert the noncompliance of documents in a timely fashion:
If the documents in any respect do not conform to the terms of the credit, the obligor bank must forthwith determine whether it will stand upon its rights to reject the documents or whether it will waive the defect. It will not do for bank or buyer to wait and ride the market. If it does so, it will have waived its objection to nonconformity of documents. Article 8 records the dual obligation of the obligor who believes that documents do not conform to the terms of the credit. Protest must be prompt; rejection must be unequivocal; and upon rejection the documents must either be forthwith returned or the obligor must forthwith represent that it holds them at the disposal of the presenter.
H. Harfield, Bank Credits & Acceptances 232 (5th ed. 1974) (emphasis added); see also Marino Industries Corp. v. Chase Manhattan Bank, N.A., 686 F.2d 112, 118 (2d Cir.1982)... .
In sum, under the Article 8 scheme, payment by MHT on the letter of credit bound Cochin to reimburse unless Cochin took the required action set forth in 8(d) and (e) to avoid its obligation. Cochin was required (1) to examine the documents and determine, within a reasonable time, whether to make a claim that MHT's payment was not in compliance with the terms of the credit; and (2) without delay and using expeditious means, to notify MHT of the specific *691 defects and to advise MHT of the disposition of the documents.
... .
"Without delay" is defined neither in Article 8 nor in any case law dealing with international letters of credit. However, the phrase is akin to "immediate (at once), instant, instantaneous, instantly, prompt." W. Burton, Legal Thesaurus 1053 (1980). All of these synonyms connote a sense of urgent action within the shortest interval of time possible. However one wishes to define "without delay," it is apparent that a twelve to thirteen day lapse of time cannot be considered notification "without delay" under any reasonable definition of that phrase. In this era of near instantaneous international communications, we can find no rationale to justify Cochin's delay in informing MHT of the specific defects and of its intention to return the documents.
Id. at 212-13 (emphasis in original). See also J. Dolan, The Law of Letters of Credit para. 6.06[1][b], at 6-59 (1991) ("Delays of seven days ..., twelve or thirteen days ..., and nine days ..., are too long.") (citations omitted); § 675.112(1)(a), Fla. Stat. (1991).
In our view the Bank of Cochin decision represents the prevailing and better view. Letters of credit are issued for a time certain. In numerous cases it will be possible for documentary deficiencies to be cured if timely notification is given. If cure is not possible, expeditious notification permits the party to take immediate steps to recapture the funds paid or otherwise protect its position. See J. Dolan, The Law of Letters of Credit para. 6.06[1][b], at 6-57 ("The duty in Article 8(e) to give notice without delay `connote[s] a sense of urgent action within the shortest interval of time possible.'") (citation omitted); see also id. para. 6.06[1][c]. While City National advocates following Philadelphia Gear Corporation v. Central Bank, 717 F.2d 230 (5th Cir.1983), we conclude that Bank of Cochin and the Philadelphia Gear dissent represent the better reasoned and more widely accepted view.[2]
The delay by City National in specifying the defects precluded it from asserting that the documents did not comply with the letter of credit.
Although we find merit in other points raised by Banco do Brasil, in view of the foregoing it is unnecessary to discuss them.
The final judgment is reversed and the cause remanded with directions to enter judgment for Banco do Brasil.
BASKIN, J., concurs.
BARKDULL, Judge (dissenting.)
I respectfully dissent.
This appeal seeks review of an adverse judgment suffered by the appellant in an attempt to collect on a Letter of Credit issued by the appellee City National Bank, hereinafter referred to as CNB. The final judgment reads in part as follows:[1]

*692 THIS CAUSE, came before the Court pursuant to the claim brought by Plaintiff, Banco do Brasil, S.A., to recover $200,000.00 paid to Sul Atlantico de Pesco, the beneficiary of a Letter of Credit issued by defendant, City National Bank of Miami.
* * * * * *
FINDINGS OF FACT
1. City National Bank issued a Letter of Credit dated October 20, 1982. The Letter of Credit was issued at the request of its customer, Sea-Land Seafood, Inc., a Miami corporation engaged in the business of importing seafood for resale in the United States. Sul Atlantico de Pesco, S.A., a Brazilian company exporting seafood in Brazil, was the beneficiary of the Letter of Credit. Banco do Brasil, a Brazilian bank, was the advising bank under the Letter of Credit. (Exhibit 5)
2. The Letter of Credit was issued on October 20, 1982, in the amount of $300,000.00. (Exhibit 5)
3. Banco do Brasil telexed City National Bank asking how payments would be made for an advance since the special condition set forth in the Letter of Credit required the product to be inspected and passed by the U.S.F.D.A. before a draft under the letter could be payable. (Exhibit 6) Subsequently, on October 26, 1982, City National Bank issued Amendment No. 1 to the letter deleting the requirements relating to the U.S.F.D.A. and substituting a guarantee from the beneficiary and one of its principals that the products would be Grade A and would pass U.S.F.D.A. inspection. (Exhibit 8)
4. By telex dated October 26, 1982, Banco do Brasil advised City National Bank that the beneficiary claimed to be entitled to advance payments of 50% of the Letter of Credit. (Exhibit 9) By telex dated October 26, 1982, the beneficiary advised City National Bank directly that it was entitled to receive 50% of the amount as an advance under the Letter of Credit. (Exhibit 7) Subsequently, on October 27, 1982, City National Bank issued Amendment No. 2 to its Letter of Credit. (Exhibit 11) Amendment No. 2 provided as follows:
`Paragraph No. 5 is extended to read: Banco do Brasil is authorized to make advance payment of 50% to the beneficiary against Certificate made out to City National Bank of Miami, Miami, Florida, and Sea-Land Seafood, Inc., issued by Inspect S.A. Itajai, Brazil... . .'
At the time of Amendment No. 2, no payments or presentments had been made under the Letter of Credit. (Exhibits 11, 15, 18 and 20)
5. By telex dated November 3, 1982, Banco do Brasil advised City National Bank that the beneficiary had presented an inspection certificate and invoice seeking an advance payment of $150,583.86 under the Letter of Credit. (Exhibit 15)
6. By telegraph dated November 4, 1982, City National Bank asked Banco do Brasil whether the $150,583.86 which was to be paid represented the total invoice of the merchandise to be shipped or an approximate 50% of the Letter of Credit amount. (Exhibit 16)
7. By telex dated November 4, 1982, Banco do Brasil advised City National Bank that the amount to be paid ($150,583.86) represented an approximate 50% of the Letter of Credit amount. (Exhibit 17)
8. By telegraph dated November 5, 1982, City National Bank advised Banco do Brasil that it had transferred $150,583.86 to Banco do Brasil's agency bank in Miami, Florida. (Exhibit 18)
9. By letter dated November 8, 1982, Banco do Brasil forwarded a survey report issued by Inspect Itajai, an invoice for $150,583.86 and a sight draft in the same amount to City National Bank. (Exhibit 20)
10. By telegraph dated November 26, 1982, City National Bank authorized Banco do Brasil to make an immediate advance payment to the beneficiary of the Letter of Credit for $50,000.00 upon the presentation of commercial invoice and certificate from Inspect Itajai. The same telegraph authorized Banco do Brasil to *693 make an additional $50,000.00 advance on December 3, 1982, under the same conditions. (Exhibit 21)
11. By letter dated December 1, 1982, Banco do Brasil forwarded to City National Bank a survey report and invoice for approximately $50,000.00. (Exhibit 22)
12. On December 3, 1982, Banco do Brasil forwarded to City National Bank a survey report and an invoice for approximately $50,000.00. (Exhibit 23)
13. By telegraph dated December 15, 1982, City National notified Banco do Brasil that it had transferred $50,000.00 to Banco do Brasil's Miami agency. By separate telegraph dated December 15, 1982, City National Bank sent a similar message. (Exhibits 24 and 25)
14. By telegraph dated December 20, 1982, City National Bank advised Banco do Brasil that $50,000.00 had been transferred to its Miami agency and requested Banco do Brasil to remit the commercial invoice and survey report. (Exhibit 27)
15. By letter dated December 21, 1982, Banco do Brasil forwarded to City National Bank a survey report and an invoice in the approximate amount of $50,000.00. (Exhibit 28)
16. By telex dated January 5, 1983, Sea-Land Seafood, Inc. requested City National Bank to increase the Letter of Credit in favor of Sul Atlantico de Pesco by $400,000.00. (Exhibit 29)
17. By telex dated January 6, 1983, City National Bank advised Banco do Brasil that the Letter of Credit was increased by $400,000.00. (Exhibit H)
18. On January 5, 1983, City National Bank issued Amendment No. 4 to the Letter of Credit increasing the amount by $400,000.00 and indicating the total balance available to be $497,238.90. (Exhibit 29A)
19. On January 7, 1983, Banco do Brasil requested City National Bank to credit its account in Banco do Brasil's Miami agency bank in the amount of $200,000.00 as an advance payment under the Letter of Credit as amended on January 6, 1983. Banco do Brasil advised City National Bank that it was remitting the commercial invoice and inspection certificate by air mail. The telex was dated January 7, 1982, but the City National Bank date stamp indicates it was received by City National Bank on January 7, 1983. (Exhibits 30 and 32)
20. By telegraph dated January 13, 1983, City National Bank advised Banco do Brasil that it would not make the $200,000.00 advance. (Exhibit 30)
21. On January 17, 1983, City National Bank received Banco do Brasil's transmittal letter enclosing a survey report, a commercial invoice in the approximate amount of $200,000.00 and sight draft. The survey report bore the date January 8, 1983 and the sight draft bore the date January 7, 1982. City National Bank's date stamp upon the original transmittal letter establishes that these documents were received on January 17, 1983. (Exhibit 31)
22. On January 14, 1983 and on other occasions after that date, Banco do Brasil requested that City National Bank either honor the Letter of Credit or provide reasons why it refused to honor the Letter of Credit. (Exhibits 33, 36, 37, 38, 39 and 40)
23. By telegraph dated June 17, 1983, City National Bank advised Banco do Brasil that the owners of Sea-Land Seafood would handle the situation directly. (Exhibit 41)
24. By telex dated August 24, 1983, Banco do Brasil advised City National Bank that it had not been contacted by the owners of Sea-Land Seafood and again requested payment. (Exhibits 43 and 44)
25. By telex dated January 11, 1984, City National Bank responded to Banco do Brasil's request for reasons why the $200,000.00 advance would not be reimbursed and indicated that the Letter of Credit required a full set of ocean bills of lading to the order of City National Bank and that they had never been received. City National Bank further advised Banco do Brasil that the certificates issued by Inspect Itajai were "spurious" and that a legal case had been filed in Brazil *694 again the beneficiary and Inspect Itajai. (Exhibit 45)
26. City National Bank closed out the Letter of Credit on July 15, 1983. At that time the Letter of Credit had a remaining balance of $347,238.90. (Exhibit 49)
CONCLUSIONS
1. Based upon the above findings of fact, the Court hereby concluded that the Letter of Credit and Amendments drafted by City National Bank are confusing and ambiguous and should ordinarily be construed against City National Bank who drafted them. However, City National Bank and Banco do Brasil would not make any payments to the beneficiary until it had received payments from City National Bank. This practice involved four payments before and one after the transaction in dispute. In light of this course of dealing, the Court finds that Paragraph 5 of the Letter of Credit, as amended, did not eliminate the need for all the documents set forth in the original Letter of Credit such as ocean bills of lading, insurance certificates, sanitary certificates, commercial invoices, a letter from Banco do Brasil confirming an advance of 50 percent of the invoice value and an inspection certificate. Accordingly, all payments under the Letter of Credit required all such documents to be presented before any money was payable to Banco do Brasil and City National Bank was justified in refusing to pay the disputed advance.
The method by which Banco do Brasil requested this particular advance varied from the prior practice. Thus City National Bank's failure to provide specific reasons for failing to make the advance was immaterial.
* * * * * *
3. The Court is not unmindful that the beneficiary used some or all of the money to pay its debts owed to Banco do Brasil. Accordingly, it is
ORDERED AND ADJUDGED that Banco do Brasil, S.A. take nothing in this cause and that City National Bank of Miami go hence without day, costs, if any, to be taxed pursuant to proper motion.
It is elementary that an appellate court cannot retry the facts. See Helman v. Seaboard Coast Line R. Co., 349 So.2d 1187 (Fla. 1977). In Helman, the Supreme Court of Florida stated the following in quashing the decision of a District Court of Appeal which failed to give deference to the findings of fact by a trial court:
First, it is not the function of an appellate court to reevaluate the evidence and substitute its judgment for that of the jury. Herzog v. Herzog, Fla.Sup.Ct., 346 So.2d 56, filed March 10, 1977; Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Ates v. Yellow Pine Land Co., 310 So.2d 772 (Fla. 1st DCA 1975); Littel v. Hunnicutt, 310 So.2d 45 (Fla. 1st DCA 1975); White v. White, 306 So.2d 608 (Fla. 1st DCA 1975); Rolland v. Thompson, 305 So.2d 239 (Fla. 1st DCA 1975); Cook v. Cook, 305 So.2d 12 (Fla. 1st DCA 1974); Imperial Lumber Co., Inc. v. James Knowles, Inc., 267 So.2d 53 (Fla. 2d DCA 1972); Becklin v. Travelers Indemnity Co., 263 So.2d 629 (Fla. 1st DCA 1972); City of Jacksonville v. Mack, 260 So.2d 542 (Fla. 1st DCA 1972); Clem v. Clem, 215 So.2d 789 (Fla. 4th DCA 1968). Second, if there is any competent evidence to support a verdict, that verdict must be sustained regardless of the District Court's opinion as to its appropriateness. Herzog v. Herzog, supra; Greenwood v. Oates, 251 So.2d 665 (Fla. 1971); Trobaugh v. Trobaugh, 81 So.2d 629 (Fla. 1955); Glass v. Parrish, 51 So.2d 717 (Fla. 1951).
349 So.2d at 1189 (emphasis added). The record in this case amply supports the trial court's findings and should not be ignored by this court.
Turning to the ground urged for reversal by the majority, that CNB delayed in stating fully its reasons for non payment, the Letter of Credit here was drawn in Florida and was to be paid in Florida. Therefore, Florida law applies. Goodman v. Olsen, 305 So.2d 753 (Fla. 1974); Rogoski v. City of Muskegon, 550 F.2d 1075 (6th Cir.1977). *695 Florida has not adopted the UCP[2] as the substantive law of this state. See Neal J. Rubenstein, The Issuer's Rights and Obligations Under a Letter of Credit, 17 UCC L.J. 129 (1984). Parties may adopt the UCP as part of their contract. Lustrelon, Inc. v. Prutscher, 178 N.J. Super. 128, 428 A.2d 518 (App.Div. 1981). In such a case, however, the UCP is subject to and cannot replace the substantive law of the state. Sound of Market Street, Inc. v. Continental Bank Int'l., 819 F.2d 384 (3d Cir.1987). In the case at bar, the Letter of Credit incorporated the 1974 edition of the UCP as part of the contract. Under Florida law, a documentary Letter of Credit requires the issuing bank to pay drafts drawn upon it when accompanied by a set of documents described in the letter. Cooper's Finer Foods, Inc. v. Pan American World Airways, Inc., 178 So.2d 62 (Fla. 3d DCA 1965). A documentary draft is defined in the Florida Statutes as:
A `documentary draft' or a `documentary demand for payment' is one honor of which is conditioned upon the presentation of a document or documents. `Document' means any paper including document of title, security, invoice, certificate, notice of default and the like.
§ 675.103(1)(b), Fla. Stat. LOC 20705 issued by CNB on October 20, 1982, was a documentary Letter of Credit. It required presentment of:
1. COMMERCIAL INVOICES IN QUADRUPLICATE.
2. ICT 10 SANITARY CERTIFICATE.
3. INSURANCE CERTIFICATE COVERING ALL PRODUCT HELD IN BENEFICIARY COLD STORAGE  COVERING `ALL RISK' INCLUDING FIRE, THEFT, REFRIGERATION, BREAKDOWN, NATURAL DISASTER AND REVOLUTION OR CONFISCATION. THIS CERTIFICATE MUST SHOW CITY NATIONAL BANK OF MIAMI AND SEA-LAND SEAFOOD INC. AS BENEFICIARY.
4. FULL SET OF CLEAN, `ON BOARD' OCEAN BILLS OF LADING DRAWN TO ORDER OF CITY NATIONAL BANK OF MIAMI, MIAMI, FLORIDA MARKED: NOTIFY SEA-LAND SEAFOOD INC., 550 N.W. LEJEUNE ROAD, SUITE 401 MIAMI, FLA. 33126 AND HOWARD S. REEDER INC., PO BOX 010389, MIAMI, FLA. 33101 AND `FREIGHT PREPAID.'
5. LETTER FROM BANCO DO BRASIL CONFIRMING ADVANCE FOR 50% OF INVOICE VALUE TO SUL ATLANTICO DE PESCA, S.A.
6. SIGNED STATEMENT FROM COMPANIA INSPECT S.A. ITAJAI, BRASIL CERTIFYING PRODUCT TO BE GRADE A QUALITY, COUNT AND LOCATION.
When Banco do Brasil, hereinafter referred to as BdB, sought payment of the $200,000 draft, BdB did not present to CNB a commercial invoice, an ICT sanitary certificate, an insurance certificate, or any bills of lading. All of those documents were required as a condition of payment. In Fidelity Nat'l Bank of South Miami v. Dade County, 371 So.2d 545 (Fla. 3d DCA 1979), this Court held:
A letter of credit amounts to an offer by the issuer to purchase certain documents. If those documents are not tendered, the offer is not accepted, and the issuer is not bound.
Id. at 548.
BdB argues that CNB was obligated to specify its reasons for failure to pay the draft.[3] In Philadelphia Gear Corp. v. Central Bank, 717 F.2d 230 (5th Cir.1983), the plaintiff contended, and the trial judge found, that since the bank had not set out its reasons for non-payment when it dishonored the draft, the bank was liable on the credit. There the plaintiff knew it was not tendering documents as required by the credit. In reversing, the Fifth Circuit held that:

*696 [i]t would be a strange rule indeed under which a party could tender drafts containing defects of which it knew and yet attain recovery on the ground that it was not advised of them.
Id. at 238. The reason for non-payment was unnecessary. BdB argues that Kerr-McGee Chemical Corp. v. FDIC, 872 F.2d 971 (11th Cir.1989) controls. There the bank's failure to specify the grounds for dishonor rendered the bank liable. But in that case the 1983 edition of the UCP, which required such specificity, had been adopted by the parties. The 1974 edition, which was adopted in this case, did not so require. In Kerr-McGee Chemical, supra, the Court, citing Philadelphia Gear, draws the distinction:
Appellee argues that Philadelphia Gear is dispositive here, and that it establishes a bank's right to dishonor any presentment on any valid ground regardless of whether it specified the reasons for its initial dishonor. The flaw in appellee's argument, however, is that none of the cases it cites was decided under the 1983 Revision of the UCP. The 1983 UCP provides that the bank must state its reasons for dishonor, and that failure to state these reasons will preclude a later claim of discrepancy. UCP Art. 16e. It is true that courts have taken varying approaches to the application of estoppel to letter of credit transactions. This fact is not relevant, however, where the parties have explicitly incorporated the 1983 UCP in the letter of credit.
Kerr-McGee Chemical, 872 F.2d at 974.
In the instant case the parties explicitly adopted the 1974 version of the UCP. Accordingly, Philadelphia Gear controls. CNB was not obligated to notify BdB of its reasons for dishonoring the draft,[4] BdB having failed to comply with the requirements of the Letter of Credit in the first instance. Fidelity Nat'l Bank of South Miami, supra; Philadelphia Gear, supra.
After the parties originally determined that there was an ambiguity in the Letter of Credit and its conditions, they established a course of conduct that required CNB, as the issuing bank, to deposit funds to BdB, agency bank in Miami, prior to BdB paying funds to the beneficiary of the Letter of Credit in Brazil. This course of conduct was followed in the payment of the first payment of $150,583.86 on November 3, 1982, the second payment of $50,000 on November 26, 1982, the third payment of $50,000 on December 3, 1982 and the fourth payment of $50,000 on December 20, 1982. On January 7, 1983, there came a request for $200,000 which allegedly had already been advanced without any prior deposit in Miami by BdB. CNB advised BdB that funds would not be forthcoming:
REYOURS JAN. 7 OUR L/C 20705 ADVANCE FOR USDLRS 200,000 WILL NOT BE MADE.
and to contact their customer in Brazil.
RE YOUR CABLE DATED MAY 31, 1983  OWNERS OF SEA-LAND SEAFOOD ARE IN BRAZIL AND WILL HANDLE THIS SITUATION DIRECTLY WITH YOU.
Some months later, BdB advised CNB that they had not heard from Sea-Land Seafood. CNB advised BdB as follows:
PLEASE NOTE THAT L/C STIPULATES "FULL SET OF OCEAN BILLS OF LADING TO THE ORDER OF CITY NATIONAL BANK OF MIAMI, STOP. THESE DOCUMENTS WERE NEVER RECEIVED, STOP. WE HAVE BEEN INFORMED THAT THE CERTIFICATE ISSUE BY INSPECT ARE SPURIOUS AND THAT A LEGAL CASE HAS BEEN FILED WITH THE COURTS IN ITAJA. AGAINST SUL ATLANTICO AND INSPECT.
In the interim, between January and August, CNB honored an additional request for $50,000 from BdB. As in the first four instances, this amount was forwarded to BdB's Miami agent prior to BdB forwarding funds to the beneficiary in Brazil. The parties established a course of conduct as a result of ambiguous *697 documents, which was that before BdB would disburse any funds in Brazil, a corresponding amount of money had to be transferred by CNB to its corresponding agent in Miami. This being so, the $200,000 claim in the instant action was advanced contrary to the parties' previous course of conduct, and subsequent course of conduct, and therefore is nonrecoverable. Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Financial Corp., 302 So.2d 404 (Fla. 1974); Southern Marine Research, Inc. v. Nateman, 434 So.2d 47 (Fla. 3d DCA 1983); Neuman v. Ferris, 432 So.2d 641 (Fla. 4th DCA 1983); C.Q. Farms, Inc. v. Cargill Inc., 363 So.2d 379 (Fla. 1st DCA 1978); Cohen v. Century Ventures, Inc., 163 So.2d 799 (Fla. 2d DCA), cert. denied, 169 So.2d 389 (Fla. 1964); Philadelphia Gear Corp. v. Central Bank, 717 F.2d 230 (5th Cir.1983); Board of Trade of San Francisco v. Swiss Credit Bank, 597 F.2d 146 (9th Cir.1979); §§ 675-102, 675-106, 675-114, Fla. Stat. (1981).
Therefore, for reasons above stated, I would sustain the trial court's final judgment here under review.
NOTES
[1] At the time City National sent its telegram, it had not received the documents from Banco do Brasil against which the $200,000 advance had been made.
[2] It is doubtful that in the present case Philadelphia Gear would lead to a different result. Under that decision, there would be a remand to determine if Banco do Brasil knowingly submitted nonconforming documents. 717 F.2d at 238. Here, however, the assertion of nonconformity was that Banco do Brasil violated an established course of dealing. The trial court found that "City National Bank and Banco do Brasil had established a course of dealing whereby Banco do Brasil would not make any payments to the beneficiary until it had received payment from City National Bank. This practice involved four payments before and one after the transaction in dispute." (Conclusion of Law 1). This conclusion is contradicted by the factual findings made by the trial court, wherein the trial court found  and the evidence indicates  that in transactions 2 and 3, Banco do Brasil first advanced funds to the Brazilian beneficiary, and thereafter requested reimbursement from City National. (Findings of Fact 10-13). There was, therefore, no substantial competent evidence to support the course of dealing found by the trial court. Further, in our view the advance clause was clear on its face and called solely for presentation of the inspection certificate actually submitted in this case.
[1] Because of the statement in the majority opinion "that there is no substantial competent evidence to support the court's findings," supra note 2, I have taken the liberty of setting out in full, the trial court's findings of facts and conclusions, and inserted the applicable place in the record where the evidence is found to support these findings of fact.
[2] Uniform Customs and Practice for Documentary Credits.
[3] When advised by telex that a draft would be presented unaccompanied by all required documents, CNB telexed BdB that the draft would not be paid.
[4] The 1974 version, Art. 8 only obligates an issuing bank to notify of discrepancies in the documents. It does not obligate the issuing bank to notify when there is a complete failure to tender documents required.